**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT ENDICOTT, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 CV 3792 |
| | ) | |
| v. | ) | Honorable Robert W. Gettleman |
| | ) | Judge Presiding |
| WEXFORD HEALTH SOURCES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants, Randy Pfister, Morgan Hudson and Anna McBee, by and through their

attorney LISA MADIGAN, Attorney General of the State of Illinois, answers Plaintiff's First

Amended Complaint state the following:

## INTRODUCTION

This is a civil action seeking damages against Defendants for, *inter alia*, committing acts, under color of state law, which deprived Mr. Endicott of rights secured by the United States Constitution and the laws of the United States.

1. While in the custody of the Illinois Department of Corrections ("IDOC"), Mr.

Endicott was housed at Stateville Correction Center ("Stateville"). During Mr. Endicott's time at

Stateville, Stateville had well-documented issues with pest infestations, inadequate air

ventilation, and mold, dust, and other unhygienic living conditions.

**ANSWER: Defendants admit Plaintiff was in the custody of the IDOC, serving time at Stateville Correctional Center. Defendants deny the remaining allegations as set forth in paragraph 1 of Plaintiff First Amended Complaint.**

2. As a result of these conditions, Mr. Endicott suffered from severe and chronic

allergies, with symptoms including difficulty breathing, dizziness, lightheadedness, blurred

vision, and chest pain.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2 of Plaintiff's First Amended Complaint.**

3.      Defendants were aware of both the conditions at Stateville and Mr. Endicott's severe and chronic allergies, yet failed to either: (i) sufficiently rectify the conditions in the prison, or (ii) properly treat Mr. Endicott's severe and chronic allergies.

**ANSWER: Defendants deny the allegations as set forth in paragraph 3 of Plaintiff First Amended Complaint**

4.      In failing to do so, Defendants repeatedly acted with deliberate and conscious indifference to Mr. Endicott's serious medical needs, thereby depriving Mr. Endicott of his rights guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States.

**ANSWER: Defendants deny the allegations as set forth in paragraph 4 of Plaintiff First Amended Complaint**

## JURISDICTION AND VENUE

5.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Mr. Endicott's rights as secured by the United States Constitution.

**ANSWER: Defendants admit only the statutory basis for the claims. Defendants deny that Plaintiff has pled a claim under any referenced statute.**

6.      This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a).

**ANSWER: Defendants admit the allegations contained in paragraph 6 of Plaintiff's First Amended Complaint.**

7.      Defendants are subject to personal jurisdiction in this judicial district. The corporate defendant does business here, and upon information and belief, the individual defendants reside here.

**ANSWER: Defendants admit the allegations contained in paragraph 7 of Plaintiff's First Amended Complaint.**

8.      Venue is proper under 28 U.S.0 § 1391(b). All of the events giving rise to the claims asserted herein occurred within the Northern District of Illinois.

**ANSWER: Defendants admit the allegations contained in paragraph 8 of Plaintiff's First Amended Complaint.**

## PARTIES

9.      From approximately September 30, 2010 until June 16, 2017, Mr. Endicott was incarcerated at Stateville, a prison facility operated by 1DOC. During that time, he required but did not receive adequate treatment for his severe and chronic allergies and related conditions.

**ANSWER: Defendants admit that Stateville is a prison facility operated by IDOC. Defendants deny the allegations that Plaintiff did not receive adequate medical treatment as set forth in paragraph 9 of Plaintiff First Amended Complaint. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 9 of Plaintiff's First Amended Complaint.**

10.      Defendant McBee was a grievance officer for IDOC at Stateville. Defendant McBee acted under color of state law when performing her duties. Defendant McBee was personally aware of Mr. Endicott's severe and chronic allergies but — despite Mr. Endicott's repeated requests — failed to take any meaningful action to rectify living conditions that caused or exacerbated such severe and chronic allergies and failed to secure appropriate medical treatment for such severe and chronic allergies.

**ANSWER: Defendants admit McBee is an employee of IDOC and served as grievance officer at Stateville during times relevant to this action, and that she acted under color of state law as the grievance officer. Defendants deny the remaining allegations as set forth in paragraph 10 of Plaintiff First Amended Complaint**

11.      Defendant Hudson was a counselor for IDOC at Stateville. Defendant Hudson acted under color of state law when performing his duties. Defendant Hudson was personally aware of Mr. Endicott's severe and chronic allergies but -- despite Mr. Endicott's repeated requests — failed to take any meaningful action to rectify living conditions that caused or

exacerbated such severe and chronic allergies and failed to secure appropriate medical treatment for such severe and chronic allergies.

**ANSWER: Defendants admit that Hudson is an employee of IDOC and served as a correctional counselor II at Stateville from May 2015 to February 2018, and he acted under color of state law as the counselor. Defendants deny the remaining allegations as set forth in paragraph 11 of Plaintiff First Amended Complaint.**

12.    Defendant Pfister was the warden at Stateville. Defendant Pfister acted under color of state law when performing his duties. Defendant Pfister was personally aware of Mr. Endicott's severe and chronic allergies, but — despite Mr. Endicott's repeated requests — failed to take any meaningful action to rectify the living conditions that caused or exacerbated such severe and chronic allergies.

**ANSWER: Defendants admit that Defendant Pfister is an employee of IDOC and served as the Warden of Stateville and that he acted under color of state law as the Warden but denies that he served in that capacity during all times material to Plaintiff First Amended Complaint. Defendants deny the remaining allegations as set forth in paragraph 12 of Plaintiff First Amended Complaint.**

13.    Defendant Wexford is a corporation conducting business in the State of Illinois. Defendant Wexford contracted with the State of Illinois to provide medical services, including treatment of allergies, to inmates in the custody of the IDOC. Defendant Wexford acted under color of state law when performing its contractual duties.

**ANSWER: Defendants admit that Wexford is a corporation, which is headquartered in Pennsylvania and employs certain healthcare providers to work in IDOC facilities pursuant to a contract.**

14.    Dr. Saleh Obaisi passed away in December 2017, after the initial *pro se* complaint in this case had been filed but before Dr. Obaisi had been served. Case law from the Northern District of Illinois supports substitution of the executor of Dr. Obaisi's estate under such

circumstances.[1] This court granted the plaintiff leave to amend the complaint on March 13, 2017, and plaintiff hereby names Ghaliah Obaisi, as the Independent Executor of the Estate of Saleh Obaisi, M.D., deceased, in lieu of Dr. Obaisi. For the purposes of this First Amended Complaint, plaintiff will refer to Defendant Obaisi to refer to the actions of Dr. Obaisi.

**ANSWER: Defendants admit the allegations contained in paragraph 14 of Plaintiff's First Amended Complaint.**

15. Defendant Obaisi was a physician licensed to practice medicine in Illinois. Defendant Obaisi was employed by Defendant Wexford to supervise the provision of medical care at Stateville. In such role, Defendant Obaisi decided what medical care Mr. Endicott was to receive. Upon information and belief, Defendant Obaisi was personally aware of Mr. Endicott's severe and chronic allergies but inexplicably declined to pursue the only course of treatment that had proven effective in treating such allergies. While supervising the provision of medical care and providing medical care directly to Mr. Endicott, Defendant Obaisi acted under color of state law.

**ANSWER: Defendants admit that Dr. Obaisi was an employee of Wexford employed as the Medical Director of Stateville. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 15 of Plaintiff's First Amended Complaint.**

## FACTS

*Stateville's Well-Documented History of*
*Pest Infestations, Inadequate Ventilation, and Unhygienic Conditions.*

16. Stateville has a well-documented history of pest infestations, inadequate air ventilation, and mold, dust, and other unhygienic conditions.

**ANSWER: Defendants deny the allegations as set forth in paragraph 16 of Plaintiff First Amended Complaint.**

---

[1] *See Hicks v. Young*, No. 10 C 3874, 2012 WL 1755735, at *1 (Nil 111. May 15, 2012).

17.     Mr. Endicott witnessed these conditions first hand throughout his seven years at Stateville, but his accounts of these conditions are thoroughly corroborated. In addition to the litany of lawsuits that have been filed in the Northern District of Illinois, the John Howard Association of Illinois ("JHA"), an independent monitor of correctional facilities and their policies and practices issued reports in 2010, 2011, and 2013 (the "JHA Reports") regarding these conditions at Stateville.

**ANSWER: Defendants deny that Stateville has a well-documented history of significant prison conditions and that a litany of lawsuits have been filed in the North District of Illinois regarding these conditions. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 17 of Plaintiff's First Amended Complaint.**

18.     **Pest Infestations**. During all relevant times, Stateville had infestations of multiple pests, including cockroaches, rodents, and birds.

**ANSWER: Defendants deny the allegations as set forth in paragraph 18 of Plaintiff First Amended Complaint.**

19.     Mr. Endicott regularly witnessed such pest infestations in the cell house and in his own cell, and complained of such conditions in formal and informal grievances.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 19 of Plaintiff's First Amended Complaint.**

20.     The JHA described these issues at length in its report after its 2011 monitoring visit to Stateville:

> The [prison] administration acknowledged that cockroach and vermin infestation is a chronic problem in Statesville's housing units ... Infestations of cockroaches, mice and birds have serious health implications for inmates and staff because these are disease vectors.

**ANSWER: Defendants deny the allegations as set forth in paragraph 20 of Plaintiff First Amended Complaint.**

21.     JHA reiterated its findings after its 2013 monitoring visit, stating:

> Inmate reports of bird, rodent, cockroach and spider infestations were common and credible ... Again, inmates reported cockroaches were impossible to get rid of and swarmed their cells at night, even getting in their ears and wound dressings.

**<u>ANSWER</u>: Defendants deny the allegations as set forth in paragraph 21 of Plaintiff First Amended Complaint.**

22.     The severe pest infestation issue and the corresponding risk to prisoner health were never remedied during Mr. Endicott's time at Stateville.

**<u>ANSWER</u>: Defendants deny the allegations as set forth in paragraph 22 of Plaintiff First Amended Complaint.**

23.     **Poor Ventilation**. During all relevant times, Stateville also failed to provide adequate air ventilation for its inmates.

**<u>ANSWER</u>: Defendants deny the allegations as set forth in paragraph 23 of Plaintiff First Amended Complaint.**

24.     Mr. Endicott witnessed inexplicable ventilation conditions at Stateville that contributed to the inadequate air ventilation and poor air quality, even during the hottest summer months when temperatures can reach up to 100 degrees Farenheit, including:

- large exhaust fans in the cell block that were turned off; steel covers that were welded over vents in each cell; and

- cell windows that were screwed shut.

**<u>ANSWER</u>: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 24 of Plaintiff's First Amended Complaint.**

25.     Consistent with Mr. Endicott's experience, JHA also described air ventilation problems at Stateville in the 2011 and 2013 JHA Reports, affirming:

- "[Stateville's] grim conditions include ... substandard heating, cooling and air ventilation ... broken and non-functioning windows."

- "Inmates in Plexiglas fronted cells also expressed concerns about temperature and ventilation, which are issues throughout the facility."

- "[Inmates] are not able to effectively regulate temperature and ventilation through the use of windows, some of which were broken."

- "We noted deteriorating flooring and built up debris ... likely blown in through the vents."

**ANSWER: Defendants deny the allegations as set forth in paragraph 25 of Plaintiff First Amended Complaint.**

26.     In other words, air did not move throughout the cell block (e.g., exhaust fans), from the cell block into the cells (*e.g*., Plexiglass and vent covers), or from the outside into the cells (*e.g*., unusable windows) and *vice versa*. And what air was circulated in the cell block was *visibly* unclean.

**ANSWER: Defendants deny the allegations as set forth in paragraph 26 of Plaintiff First Amended Complaint.**

27.     The severe air ventilation and air quality issues — and their corresponding risk to prisoner health — were never remedied during Mr. Endicott's time at Stateville.

**ANSWER: Defendants deny the allegations as set forth in paragraph 27 of Plaintiff First Amended Complaint.**

28.     **Other Unhygienic Conditions**. During all relevant times, Stateville maintained other unhygienic conditions. In particular, mold grew, and dust collected, visibly in the cells and public areas. Plumbing also routinely malfunctioned, and inmates were denied the cleaning supplies needed to remedy unsanitary conditions.

**ANSWER: Defendants deny the allegations as set forth in paragraph 28 of Plaintiff First Amended Complaint.**

29.     Mr. Endicott witnessed each of these unsanitary conditions firsthand. Mr. Endicott saw mold growth and dust collection in his cell and in the public area. Mr. Endicott's toilet did not function properly for approximately one year between April 2014 and April 2015.

And Mr. Endicott could not remedy any of the unsanitary conditions at Stateville on his own

because he was denied access to basic cleaning supplies.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 29 of Plaintiff's First Amended Complaint.**

30.     Again, the JHA Reports corroborate Mr. Endicott's account of each of these conditions, affirming:

- "Inmates also reported that the showers in the round were exceptionally dirty, peeling, molding."

- "JHA visitors found ... peeling paint, water leaks, and mold."

- "We noted deteriorating flooring and built up debris ... likely blown in through the vents."

- "Another major housing issue reported by inmates in the roundhouse was malfunctioning toilets in the cells ... Even assuming the roundhouse's plumbing meets applicable health standards, the morale and mental well-being [of] inmates and staff are negatively impacted by having to live and work in filthy conditions."

- "Notably, several inmates reported to JHA that it was difficult for them to obtain cleaning supplies and hygiene products from the staff. The administration ... acknowledged, however, that staff members are sometimes lax handing out these supplies."

**ANSWER: Defendants deny the allegations as set forth in paragraph 30 of Plaintiff First Amended Complaint.**

31.     These unhygienic conditions — and the corresponding risk to prisoner health —

were never remedied during Mr. Endicott's time at Stateville.

**ANSWER: Defendants deny the allegations as set forth in paragraph 31 of Plaintiff First Amended Complaint.**

***Conditions at Stateville Cause Mr. Endicott's Allergies to Become Chronic and Severe***

32.     While the pest infestations, poor ventilation, and other unhygienic conditions

described above may be *per se* cruel and unusual in violation of Mr. Endicott's Eighth and

Fourteenth Amendment rights, those conditions posed a unique health risk — and caused a

unique harm — to Mr. Endicott, who has suffered and continues to suffer from severe and chronic allergies.

**ANSWER: Defendants admit only the statutory basis for the claims. Defendants deny that Plaintiff has pled a claim under any referenced statute.**

33. Before arriving at Stateville, Mr. Endicott suffered from mild allergies. He was generally symptom free, and on those occasions that he did experience mild symptoms, he was able to function without medication.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 33 of Plaintiff's First Amended Complaint.**

34. However, almost immediately upon arriving at Stateville, Mr. Endicott's mild allergies became increasingly severe and increasingly debilitating due to the rampant pest infestations, poor air ventilation, mold, dust, and other unhygienic conditions.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 34 of Plaintiff's First Amended Complaint.**

35. It is common knowledge that each of the conditions described above — *i.e.*, pest infestations, poor ventilation, mold, and dust — cause or exacerbate severe allergies. In fact, medical experts have identified *precisely* these conditions as some of the most harmful environmental factors causing or exacerbating allergies.[2]

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 35 of Plaintiff's First Amended Complaint.**

---

[2] *See* Lakiea S. Wright, M.D., and Wanda Phipatanakul, M.D., Environmental Remediation in the Treatment of Allergy and Asthma: Latest Updates, Current Allergy and Asthma Rep. (Mar. 2014), *available at* https://www.nebi.nlm.nih.gov/pmc/articles/PMC396602l/ .

36. With limited exceptions described below, Mr. Endicott's allergies remained chronic and severe throughout the duration of his time at Stateville because Defendants did not remedy the harmful environmental conditions and did not provide proper medical treatment.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Plaintiff's allergies as set forth in paragraph 29 of Plaintiff's First Amended Complaint. Defendants deny the remaining allegations as set forth in paragraph 36 of Plaintiff First Amended Complaint.**

37. Importantly, when Mr. Endicott was transferred from Stateville to Menard Correctional Center ("Menard"), Mr. Endicott's symptoms decreased significantly (although not to the level of occasional and mild allergies that Mr. Endicott suffered before his incarceration). While Mr. Endicott suffers some allergy symptoms at Menard, the extreme difficulty breathing, dizziness, lightheadedness, and chest pains have ceased. Menard, another IDOC facility, does not have the problems with pest infestations, poor air ventilation, mold and other unhygienic conditions to the same degree as Stateville.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Plaintiff's allergies or conditions at Menard as set forth in paragraph 37 of Plaintiff's First Amended Complaint. Defendants deny the remaining allegations as set forth in paragraph 37 of Plaintiff First Amended Complaint.**

### Defendants Fail to Remedy the Awful Conditions at Stateville

38. Upon first experiencing the chronic and severe allergy symptoms described above, Mr. Endicott repeatedly requested appropriate environmental remediation. Mr. Endicott did so both through the formal grievance process and through other informal channels.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 38 of Plaintiff's First Amended Complaint.**

39.     Mr. Endicott first requested such relief from IDOC grievance officers and counselors, including but not limited to Defendants Hudson and McBee.[3]

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 39 of Plaintiff's First Amended Complaint.**

40.     In particular, Mr. Endicott requested: (i) maintenance of windows, exhaust fans, and in-cell vent covers to improve the poor air ventilation; (ii) provision of cleaning supplies to alleviate excessive dust, mold, and other allergens; and (iii) remediation of various pest infestations, including but not limited to mice, cockroaches, and birds to further improve air quality.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 40 of Plaintiff's First Amended Complaint.**

41.     When Mr. Endicott's grievances went unresolved for months and even years on end, Mr. Endicott filed emergency grievances. Pursuant to Ill. Admin. Code § 504.840, emergency grievances are sent to the Chief Administrative Officer of the prison — typically, the warden.

**ANSWER: Defendants admit that Plaintiff has accurately summarized portions of Ill. Admin. Code § 504.840 but deny that they violated any portion of Ill. Admin. Code § 504.840.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 41 of Plaintiff's First Amended Complaint.**

42.     Defendant Pfister was named warden at Stateville in late 2015.

**ANSWER: Defendant's admit Pfister was warden at Stateville from November 12, 2015 to January 31, 2018.**

---

[3] Mr. Endicott made his request for appropriate environmental remediation and/or medical care for his chronic and severe allergies from several IDOC grievance officers and counselors, but IDOC grievance officers and counselors changed so frequently that Mr. Endicott is not able to name every such grievance officer or counselor at this time.

43.     After not receiving a response to one emergency grievance for six months, Mr. Endicott filed a second emergency grievance in January 2016. In the second emergency grievance, Mr. Endicott raised the pest infestations, the poor ventilation, and the other unhygienic conditions, stating clearly, "I'm being effected by the mold, dust, lack of ventilation system, mice droppings, roaches, birds flying thru the cell houses, no cleaning supplies passed out ...."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of Plaintiff's First Amended Complaint.**

44.     Mr. Endicott then sent three follow-up letters asking for resolution of his January 2016 emergency grievance on January 24, February 1, and February 8. Mr. Endicott never received a response.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 44 of Plaintiff's First Amended Complaint.**

45.     Separately, in March 2016, Mr. Endicott filed a medical grievance about being unable to receive the allergy medications that had been prescribed to him. Defendant Pfister signed off on the resolution of that medical grievance.

**ANSWER: Defendants admit Plaintiff filed a medical grievance on March 1, 2016. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 45 of Plaintiff's First Amended Complaint.**

46.     Defendants McBee, Hudson, and Pfister all had personal knowledge of Mr. Endicott's severe and chronic allergies, yet failed to take any meaningful action with respect to Mr. Endicott's requests for environmental remediation, which went unfulfilled. Defendants McBee, Hudson, and Pfister took no meaningful steps to remediate pest infestations; to restore

windows, exhaust fans, and vents to proper functioning; to provide basic cleaning supplies when necessary to inmates; or to repair plumbing issues in a timely fashion.[4]

**ANSWER: Defendants deny the allegations as set forth in paragraph 46 of Plaintiff First Amended Complaint.**

47.     As a result, Defendants Hudson, McBee, and Pfister subjected Mr. Endicott, who they knew suffered from chronic and severe allergies, to extremely poor air quality, which either caused or exacerbated his breathing difficulties. Simply put, Defendants Hudson, McBee, and Pfister subjected Mr. Endicott to serious and chronic respiratory illness.

**ANSWER: Defendants deny the allegations as set forth in paragraph 47 of Plaintiff First Amended Complaint.**

*Defendants Fail to Secure/Provide Adequate Medical Care for Mr. Endicott's Severe Allergies*

48.     Stateville also has a well-documented history of significant problems in the provision of medical care to inmates. A litany of lawsuits that have been filed in the Northern District of Illinois regarding the provision of medical care at Stateville. In one such case — *Lippert v. Godinez*, No. 10 CV 6403 — an expert report examined the provision of medical services throughout IDOC facilities, including Stateville, and noted some of the very same issues that Mr. Endicott experienced.

**ANSWER: Defendants deny that Stateville has a well-documented history of significant problems of medical care to inmates and that a litany of lawsuits have been filed in the North District of Illinois regarding medical care to inmates. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 48 of Plaintiff's First Amended Complaint.**

---

[4] During the time that his toilet did not work properly, Mr. Endicott, suffering from serious respiratory issues that often left him breathing deeply, was subjected to the additional indignity of breathing in the foul stench of human waste.

49.     Upon experiencing the severe allergy symptoms described above, Mr. Endicott repeatedly requested to see a medical professional. However, Mr. Endicott often had difficulty seeing any medical professional even though he followed the appropriate Stateville sick call process to the best of his ability. Indeed, the *Lippert v. Godinez* expert report noted "a major problem with access to care at [Stateville}," including up to 75% "delayed or missed chronic care clinics, telemedicine visits, and sick call."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 49 of Plaintiff's First Amended Complaint.**

50.     While Mr. Endicott was often not permitted to see medical professionals, on those occasions when he was permitted, Mr. Endicott asked for medical care to alleviate his severe and chronic allergies. Upon information and belief, those medical professionals, including Defendant Obaisi, were employees of Defendant Wexford.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 50 of Plaintiff's First Amended Complaint.**

51.     Mr. Endicott experienced significant issues with the care that he did receive for his chronic and severe allergies. Indeed, the *Lippert v. Godinez* expert report noted similar issues with chronic disease management at Stateville, including patients "seen every four months regardless of degree of control" and "multiple instances of patients running out of their medications."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 51 of Plaintiff's First Amended Complaint.**

52.     The course of treatment for Mr. Endicott's severe and chronic allergies can be divided into four phases.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 52 of Plaintiff's First Amended Complaint.**

53.    First, medical professionals, including Defendant Obaisi, prescribed Mr. Endicott an allergy medication in pill form. That pill proved only minimally effective in alleviating Mr. Endicott's severe and chronic allergy symptoms, including difficulty breathing, dizziness, lightheadedness, blurred vision, and chest pain. Moreover, Mr. Endicott only sporadically received the pill from Defendant Wexford, thereby minimizing any effectiveness that the pill did have.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 53 of Plaintiff's First Amended Complaint.**

54.    Second, after that pill proved ineffective, medical professionals, including Defendant Obaisi, provided Mr. Endicott with an allergy medication in injection form. Mr. Endicott received the injections approximately once per month for a period of a few months. This proved to be the most effective treatment that Mr. Endicott would receive at Stateville. But Defendant Wexford and Defendant Obaisi soon refused to provide this more effective (but likely more expensive) injection to Mr. Endicott.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 54 of Plaintiff's First Amended Complaint.**

55.    Third, after refusing to provide the injection, medical professionals, including Defendant Obaisi, prescribed Mr. Endicott a second allergy medication in pill form. However, after prescribing the medication to Mr. Endicott, Defendant Wexford failed to ever distribute the medication to Mr. Endicott. On one occasion, Mr. Endicott received a notification that the

medication could not be delivered because he was not in his cell at the time of distribution. But Mr. Endicott never received the medication thereafter.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 55 of Plaintiff's First Amended Complaint.**

56.     Finally, after not receiving the second prescribed pill, Mr. Endicott received no treatment whatsoever for the duration of his time at Stateville. In other words, despite suffering difficulty breathing, dizziness, lightheadedness, blurred vision, and chest pain, Mr. Endicott received no medical treatment from Defendants Wexford and Obaisi.

**ANSWER: Defendants deny the allegations as set forth in paragraph 56 of Plaintiff First Amended Complaint.**

57.     Unfortunately, Mr. Endicott's course of treatment appears to be commonplace among allergy sufferers at Stateville. For instance, the *Lippert v. Godinez* expert report details the care for another allergy sufferer as follows:

- 2/12/13 — Cancelled due to no provider

- 2/13 — No show

- 2/16 — Lockdown

- 3/6 — No provider

- 3/23 — No show

- 5/11 — No show

- 6/4 — Patient was seen. At this point, he was using his rescue inhaler daily due to allergies. His peak flow was 540 and he was deemed to be under "fair" control. Loratadine and Nasonex were added.

- 11/8 No show

- 11/14 — No provider

- 12/3 — Seen. He was using his rescue inhaler multiple times daily. Peak flow readings were somewhat low at 5201500/490. Wheezing was head on exam and his steroid inhaler was increased.

- 2/6/14 - Left without being seen.

- 211 1 — Still using his rescue inhaler daily. Peak flow a bit low at 520/500/480. Meds renewed. Long discussion regarding medication usage.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 57 of Plaintiff's First Amended Complaint.

58.     The *Lippert v. Godinez* expert report then concludes that this patient's respiratory issues were "poorly controlled," that this patient "should have been seen more frequently for monitoring and medication adjustment," and that this patient's scheduled care visits "did not take place for a variety of reasons," some of which should not apply in a maximum security prison.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 58 of Plaintiff's First Amended Complaint.

59.     All of these observations hold true for Mr. Endicott's course of treatment as well.

**ANSWER**: Defendants deny the allegations as set forth in paragraph 59 of Plaintiff First Amended Complaint.

*Causation*

60.     Due to Defendants' failure to provide reasonably sanitary prison conditions and/or appropriate medical care, Mr. Endicott endured chronic and severe allergies for approximately seven years. In particular, Mr. Endicott suffered from difficulty breathing, dizziness, lightheadedness, blurred vision, chest pain, and related emotional pain and suffering.

**ANSWER**: Defendants deny the allegations as set forth in paragraph 60 of Plaintiff First Amended Complaint.

61.     Prison officials must provide reasonably sanitary prison conditions for inmates. It is beyond dispute that the conditions at Stateville — including rampant pest infestations,

inadequate air ventilation, mold, and dust — were not reasonably sanitary. Moreover, those very conditions are known to cause or exacerbate allergies.

**ANSWER:** **Plaintiff has failed to define the term "reasonably sanitary" therefore Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 61 of Plaintiff's First Amended Complaint. Defendants deny the remaining allegations as set forth in paragraph 61 of Plaintiff First Amended Complaint**

62.     Similarly, medical care providers must have their patients' best interests in mind when making medical decisions. Yet Defendant Wexford maintains policies and practices that do not meet this standard. Defendant Wexford routinely ignores serious medical needs such as allergies that do not necessarily rise to the level of emergent care, and Defendant Wexford further routinely pursues courses of treatment that are proven to be less effective (but also less expensive) over courses of treatment that are proven to be much more effective (but also more expensive). Accordingly, Defendants Wexford and Obaisi refused to provide injections that had proven effective in treating Mr. Endicott's allergies at Stateville and instead insisted on either providing pills that had proven ineffective in treating Mr. Endicott's allergies at Stateville or no treatment at all.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 62 of Plaintiff's First Amended Complaint.**

63.     In short, Stateville made Mr. Endicott very sick, and Defendants did almost nothing about it.

**ANSWER:** **Defendants deny the allegations as set forth in paragraph 63 of Plaintiff First Amended Complaint.**

**COUNT l — EIGHTH AMENDMENT VIOLATIONS**
**DEFENDANTS McBEE, HUDSON, AND PFISTER**

64.     Mr. Endicott restates and incorporates by reference the allegations of Paragraph 1 through 63 herein.

**ANSWER: Defendants incorporate their responses to paragraphs 1 through 63 as stated fully as their response to paragraph 65 of Plaintiff's First Amended Complaint.**

65. Mr. Endicott brings Count I against Defendants McBee, Hudson, and Pfister in

their individual and official capacities.

**ANSWER: Defendants admit that Plaintiff purports to sue them in their individual and official capacities but deny they can be sued in their official capacities for the purposes of monetary relief.**

66. Mr. Endicott suffered from a serious medical need while at Stateville in that he

had severe allergies, with symptoms including difficulty breathing, dizziness, lightheadedness,

blurred vision, and chest pain.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 66 of Plaintiff's First Amended Complaint.**

67. Upon information and belief, Defendants McBee, Hudson, and Pfister were

responsible for addressing inmate grievances (or emergency grievances) and ensuring minimum

living standards at Stateville. Defendants McBee, Hudson, and Pfister acted under color of state

law when performing these duties.

**ANSWER: Defendants McBee and Hudson admit as part of their duties as grievance officer and correctional counselor, they would respond to non-emergency grievances. Defendants McBee and Hudson deny the remaining allegations as set forth in paragraph 67 of Plaintiff's First Amended Complaint. Defendant Pfister admits as warden his assigned designee would review and sign non-emergency and emergency grievances. Defendant Pfister denies the remaining allegations as set forth in paragraph 67 of Plaintiff's First Amended Complaint.**

68. Defendants McBee, Hudson, and Pfister knew that prison conditions at Stateville,

including rampant pest infestations, poor air ventilation, mold, and dust caused or exacerbated

respiratory illness such as Mr. Endicott's chronic and severe allergies. Mr. Endicott informed

Defendants McBee, Hudson, and Pfister that he was experiencing chronic and severe respiratory

issues, and Mr. Endicott specifically identified conditions that he believed contributed to his all-of-a-sudden severe and chronic allergies, including rampant pest infestations, poor air ventilation, mold, and dust.

**ANSWER: Defendants deny the allegations as set forth in paragraph 68 of Plaintiff First Amended Complaint.**

69.     However, despite their awareness of Mr. Endicott's serious medical needs, Defendants McBee, Hudson, and Pfister did not take any meaningful steps to remedy the harmful environmental conditions that contributed to Mr. Endicott's severe respiratory issues. Indeed, those harmful environmental conditions persisted throughout the entirety Mr. Endicott's seven-year-stay at Stateville.

**ANSWER: Defendants deny the allegations as set forth in paragraph 69 of Plaintiff First Amended Complaint.**

70.     As a result of Defendant McBee's, Defendant Hudson's, and Defendant Pfister's utter failure to remedy those harmful environmental conditions, Mr. Endicott endured chronic and severe allergies for approximately seven years, including difficulty breathing, dizziness, lightheadedness, blurred vision, chest pain, and related emotional pain and suffering.

**ANSWER: Defendants deny the allegations as set forth in paragraph 70 of Plaintiff First Amended Complaint.**

71.     In short, Defendant McBee's, Defendant Hudson's, and Defendant Pfister's failure to provide a reasonably safe environment for inmates who suffer from respiratory issues constituted deliberate indifference and reckless disregard of Mr. Endicott's serious medical needs and caused Mr. Endicott to suffer unnecessary pain and suffering in violation of his Eighth Amendment rights.

**ANSWER: Defendants deny the allegations as set forth in paragraph 71 of Plaintiff First Amended Complaint.**

## COUNT II — EIGHTH AMENDMENT VIOLATIONS
## <u>DEFENDANTS OBAISI</u>

72.     Mr. Endicott restates and incorporates by reference the allegations of Paragraph 1 through 71 herein.

**<u>ANSWER</u>: Defendants incorporate their responses to paragraphs 1 through 71 as stated fully as their response to paragraph 72 of Plaintiff's First Amended Complaint.**

73.     Mr. Endicott brings Count II against Defendant Obaisi in his official and individual capacities.

**<u>ANSWER</u>: Defendants admit that Plaintiff purports to sue Dr. Obaisi in his individual and official capacities.**

74.     Mr. Endicott suffered from a serious medical need while at Stateville in that he had severe allergies, with symptoms including difficulty breathing, dizziness, lightheadedness, blurred vision, and chest pain.

**<u>ANSWER</u>: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 74 of Plaintiff's First Amended Complaint.**

75.     Upon information and belief, Defendant Obaisi was responsible for supervising the provision of all medical services, including care for respiratory issues, at Stateville. In this role, Defendant Obaisi directly and indirectly determined the extent of the care that Mr. Endicott received for his severe and chronic allergies. Defendant Obaisi acted under color of state law when performing these duties.

**<u>ANSWER</u>: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 75 of Plaintiff's First Amended Complaint.**

76.     Defendant Obaisi knew that Mr. Endicott's chronic and severe allergies were a serious condition requiring appropriate treatment. Mr. Endicott repeatedly informed prison and medical personnel that he was experiencing serious symptoms, including difficulty breathing, dizziness, lightheadedness, blurred vision, and chest pain.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 76 of Plaintiff's First Amended Complaint.**

77.     However, despite Defendant Obaisi's awareness, Defendant Obaisi prescribed ineffective medications in pill form rather than injections that had proven relatively successful in combatting Mr. Endicott's severe and chronic allergies. Indeed, at times, Defendant Obaisi provided no treatment at all.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 77 of Plaintiff's First Amended Complaint.**

78.     As a result of Defendant Obaisi's conduct, Mr. Endicott lived with severe respiratory symptoms, including difficulty breathing, dizziness, lightheadedness, blurred vision, and chest pain, for the vast majority of his time at Stateville. Mr. Endicott also suffered related emotional pain and suffering.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 78 of Plaintiff's First Amended Complaint.**

79.     In short, Defendant Obaisi's conduct constituted deliberate indifference to, and reckless disregard of, Mr. Endicott's serious medical needs and caused Mr. Endicott to suffer unnecessary respiratory issues and related pain and suffering in violation of his Eighth Amendment rights.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 79 of Plaintiff's First Amended Complaint.**

## COUNT III — EIGHTH AMENDMENT VIOLATIONS
## <u>DEFENDANTS WEXFORD</u>

80.     Mr. Endicott restates and incorporates by reference the allegations of Paragraph 1 through 79 herein.

**ANSWER: Defendants incorporate their responses to paragraphs 1 through 79 as stated fully as their response to paragraph 80 of Plaintiff's First Amended Complaint.**

81.     Mr. Endicott suffered from a serious medical need while at Stateville in that he had severe allergies, with symptoms including difficulty breathing, dizziness, lightheadedness, blurred vision, and chest pain.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 81 of Plaintiff's First Amended Complaint.**

82.     Defendant Wexford knew that Mr. Endicott's chronic and severe allergies were a serious condition requiring appropriate treatment.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 82 of Plaintiff's First Amended Complaint.**

83.     At all relevant times, under its contract with the IDOC, Defendant Wexford was responsible for maintaining official policies and practices to ensure the adequate provision of medical services, including care for respiratory illnesses, at Stateville. Defendant Wexford acted under color of law when it performed this duty.

**ANSWER: Defendants admit that Wexford employs certain healthcare providers to work in IDOC facilities pursuant to a contract.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 83 of Plaintiff's First Amended Complaint.**

84.     Instead, Defendant Wexford maintained official policies and actual practices that were deliberately indifferent to inmates' serious medical needs. In particular, Defendant Wexford routinely ignores serious medical needs such as allergies that do not necessarily rise to the level of emergent care, and Defendant Wexford further routinely pursues courses of treatment that are proven to be less effective (but also less expensive) over courses of treatment that are proven to be much more effective (but also more expensive).

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 84 of Plaintiff's First Amended Complaint.**

85.     Defendant Wexford's policies and practices were so prevalent as to have the force of law.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 85 of Plaintiff's First Amended Complaint.**

86.     As a result of Defendant Wexford's policies and practices, Mr. Endicott endured unnecessarily prolonged respiratory issues, including difficulty breathing, dizziness, lightheadedness, blurred vision, and chest pain. Mr. Endicott also suffered related emotional pain and suffering.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 86 of Plaintiff's First Amended Complaint.**

87.     In short, Defendant Wexford's policies and practices constituted deliberate indifference to and reckless disregard of Mr. Endicott's serious medical needs and caused Mr. Endicott to suffer unnecessary respiratory issues and related pain and suffering in violation of his Eighth Amendment rights.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 87 of Plaintiff's First Amended Complaint.**

WHEREFORE, Plaintiff Scott Endicott demands judgment against the Defendants with interest for actual and consequential damages; punitive and exemplary damages; attorneys' fees, interest and costs, which are still accruing; and any other relief deemed by the trier of fact to be just, fair, and appropriate.

**ANSWER: Defendants deny that Plaintiff is entitled to any relief whatsoever.**

## AFFIRMATIVE DEFENSES

Defendants, Randy Pfister, Morgan Hudson and Anna McBee, by and through their attorney, Lisa Madigan, Attorney General for Illinois, plead the following Affirmative Defenses.

### First Affirmative Defense
Qualified Immunity

At all times relevant herein, Defendants acted in good faith and in furtherance of lawful objectives without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrine of qualified immunity.

### Second Affirmative Defense
Eleventh Amendment

The Court lacks jurisdiction over any monetary relief against Defendants in their official capacities under the Eleventh Amendment.

### Third Affirmative Defense
Prison Litigation Reform Act

To the extent applicable, Plaintiff is governed by the Prison Litigation Reform Act ("Act"), 42 U.S.C. § 1997(e)(a). Plaintiff failed to exhaust the administrative remedies as required by the Act, *id*.; *see also Dale v. Lappin*, 376 F. 3d 652, 655 (7th Cir. 2004).

### JURY DEMAND

Defendants demand a trial by jury on all issues herein triable.

Dated: July 30, 2018

Respectfully Submitted,

LISA MADIGAN                         /s/ Andrew O'Donnell_____
Attorney General of Illinois          ANDREW O'DONNELL
                                      Assistant Attorney General
                                      General Law Bureau
                                      Office of the Illinois Attorney General
                                      100 West Randolph Street, 13th Floor
                                      Chicago, Illinois 60601
                                      (312) 814-4659
                                      aodonnell@atg.state.il.us

                                      *Attorney for Defendants Pfister, Hudson and McBee*

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 30, 2018, he electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Andrew O'Donnell*

Andrew O'Donnell